# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| BRYCE DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00038-SNLJ |
| | ) | |
| MARK DOBBS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Bryce Davis for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $13.72. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will direct plaintiff to file an amended complaint.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of his motion for leave to proceed in forma pauperis, plaintiff has submitted a copy of his inmate account statement. (Docket No. 3). The account statement shows an average monthly deposit of $68.60. The Court will therefore assess an initial partial filing fee of $13.72, which is 20 percent of plaintiff's average monthly deposit.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should

2

construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### The Complaint

Plaintiff is a self-represented litigant who is currently incarcerated at the Butler County Jail in Poplar Bluff, Missouri. He brings this civil action pursuant to 42 U.S.C. § 1983, naming fourteen separate defendants: (1) Sheriff Mark Dobbs; (2) Jail Administrator Rodger Burton; (3) Jail Administrative Consult Dave Light; (4) Correctional Officer 7 (CO) Samuel T.; (5) CO Lakeisha Miller; (6) CO Unknown Ketchum; (7) CO Franscisco Vega; (8) Nurse Shane Unknown; (9) CO Reggie Unknown; (10) Supervisor Unknown Taylor; (11) CO J. Allen; (12) Supervisor Jeff Unknown; (13) CO 2 Mike McMean; and (14) Supervisor Luke Unknown. (Docket No. 1 at 1). Sheriff Dobbs and Jail Administrator Burton are sued in both their official and individual capacities. (Docket No. 1 at 2-3). Plaintiff does not indicate the capacity in which the other defendants are sued.

In the "Statement of Claim," plaintiff asserts that he "caught Covid-19[1] and was neglected by officers, as well as denied medical attention." (Docket No. 1 at 3). This occurred between mid-January and mid-February at the "Butler County Justice Center." Due to contracting the virus, he suffered "loss of taste, loss of smell, fever, body aches," inability to eat, cold sweats, headaches, difficulty breathing, and other symptoms.

By way of further explanation, plaintiff states that he "notified all officers that [he] was sick and told them [his] symptoms." (Docket No. 1 at 4). He then lists a series of questions he allegedly posed, stating that he "asked all officers if they would check [his] temperature," that he "asked all officers if they would allow us to use hand sanitizer," that he "asked all officers how is it that we have to use the same kiosk machine as the people who are sick," that he "asked if they would at least give [him] something to wipe…down [the kiosk machine]," that he "asked all officers if they cared that we were being put at risk by them," that he asked about his grievances not being answered, that he asked why he had not been "seen [by] medical yet, when [he] put in a request to see the nurse," and that he "asked why they wouldn't help [him]." Plaintiff also asked to speak with Sheriff Dobbs, Officer McMean, Administrator Light, or Administrator Burton.

Following those questions, plaintiff purports to provide the responses he received from both named and unnamed individuals.

In response to his notification that he was sick, plaintiff states that "all officers told [him] to fill out a medical request form, which [he] did." (Docket No. 1 at 5).

---

[1] COVID-19 is the name of the disease caused by the novel coronavirus known as SARS-CoV-2, which originated in China, spread globally, and resulted in the declaration of a national emergency. *See* Pres. Proc. No. 9994, 85 Fed. Reg. 15337, 2020 WL 1272563 (Mar. 13, 2020). *See also Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 734 (8th Cir. 2021). In the United States, the virus has resulted in hundreds of thousands of cases, and tens of thousands of deaths. *See In re Rutledge*, 956 F.3d 1018, 1023 (8th Cir. 2020).

4

In response to his request to have his temperature taken, he states that "all officers claimed to be too busy to check it."

In response to his request for hand sanitizer, plaintiff contends that "all officers said that inmates weren't allowed to have it," and that sanitizer and masks were "only for officers."

In response to plaintiff's inquiries about wiping down the kiosk machine, plaintiff asserts that Officer Vega "put hand sanitizer on some tissue paper and stated if he could do more he would but his hands were tied," and that if it were up to Vega, "we would have our own sanitizer." Likewise, Officer Miller told him that it was "messed up" that plaintiff was "right next door to people who have Covid," that "they" would not allow Miller to "do nothing" for the inmates, even though she asked, and that "they" did not care if the inmates got "sick, die, or nothing." Officer Taylor advised plaintiff that he understood plaintiff's concerns, and would have the trustees wipe the machine "if he has enough time," while Officer Jeff stated that he "would check with Mike [and] Dave but that[']s all he could do" because "they told him not to give us anything."

In addition, plaintiff states that Officer Allen told him that "these people don't care," that "they tell us not to bother them" as long as the inmates were "not dying," and that when he asked, he was told to "ignore you if you ask constantly." Officer Reggie told plaintiff the situation was "messed up" and that he would do more if he could, "but he needs his job." (Docket No. 1 at 6). Similarly, Officer Ketchum advised that "it is messed up," that he did not want the inmates to "get sick either," but that "they don't want [him] giving you guys nothing." Both Officer Samuel and Supervisor Luke told plaintiff they understood his concerns, that there were limited things they could personally do, but that they would ask their superiors. Despite being told that his complaints would move higher, plaintiff alleges that Officer McMean, Administrator Burton, Sheriff Dobbs, and Administrator Light "never spoke with [him]."

In response to plaintiff's broad inquiry as to whether the officers "cared" that inmates were being put at risk, plaintiff asserts that "all officers stated" that it was "not their job to care," and that "all they could do is what they[']re told."

In response to his grievance question, plaintiff states that Officer Miller told him "they don't read those things" and that "they" told the officers "to ignore y'all." (Docket No. 1 at 6-7). According to plaintiff, "all the other officers stated that if [he] put one in it made it where it was supposed to go," or "they had no idea that [he] filed one." (Docket No. 1 at 7).

In response to his question about seeing medical, Officer Ketchum explained to plaintiff that "he took [his] medical request [to] Officer Sam," who told Ketchum "he would take care of it." Officer Samuel, however, told him that he "never received [plaintiff's] request" from Officer Ketchum, but "that if he did," Samuel would have "dropped it in Nurse Shane[']s box." According to plaintiff, "all the other officers stated they had nothing to do with how medical works" and that plaintiff would be seen "when they had time."

In response to plaintiff's question as to "why they wouldn't help [him]," plaintiff claims that "all officers stated that all they could do is what they're told," and that even though they "understood" his concerns and would help if they could, "they had their orders."

In response to plaintiff's requests to speak with defendants McMean, Light, Burton, and Dobbs, plaintiff acknowledges speaking with Administrator Light. (Docket No. 1 at 8). When plaintiff "told Dave what was going on," Light responded that "he would send someone to test [him] for Covid." Nonetheless, plaintiff alleges that he has "not been tested for" Covid-19 or influenza to this day. The Court notes that earlier in his "Statement of Claim," he claims to have contracted Covid-19, an assertion in contradiction to his contention that he has not been tested. Plaintiff also notes that Administrator Light told him to "give [Light] some time" to help.

6

As to his request to speak with Sheriff Dobbs, plaintiff complains that he has not spoken with the sheriff "to this day."

Plaintiff closes his "Statement of Claim" by providing general allegations as to the handling of COVID-19 at the Butler County Jail. He states that he has to "eat off of the same trays as inmates who have or have had Covid 19/influenza," that "officers don't wear masks to prevent cross contamination," that he has "to use the same kiosk as inmates who have, have had or who are being [quarantined] for Covid 19/influenza," that he has seen officers coughing or sneezing while serving food, that "officers are not getting tested for Covid-19 and declared negative before being able to work around inmates," that inmates are being put into pods "right off the street," without testing them first, that inmates do not have sanitizers, that "officers are coming to work sick without fully recovering," that an officer told him he would probably get COVID-19 because the officer had it, and that inmates are not being asked if they want the vaccine. (Docket No. 1 at 9). Though he states he has never been tested, plaintiff asserts that he has "had Covid twice" and still not been vaccinated.

Based on these facts, plaintiff seeks release from confinement and his criminal charges dropped. (Docket No. 1 at 10). He also seeks unspecified monetary damages, to be decided by a jury.

## Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated due to defendants' handling of the COVID-19 pandemic. Because he is proceeding in forma pauperis, the Court reviewed his complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court has determined that plaintiff's complaint is deficient and subject to dismissal. However,

plaintiff will be given an opportunity to file an amended complaint according to the instructions set forth below.

### A. Deficiencies in Complaint

Plaintiff's complaint is deficient and subject to dismissal for four reasons. First, his official capacity claims against defendants Dobbs and Burton are treated as being made against Butler County, their employer. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (explaining that a "suit against a public employee in his or her official capacity is merely a suit against the public employer"). In this case, however, plaintiff has not sufficiently alleged a municipal liability claim against the county. *See Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). While plaintiff broadly complains about the Butler County Jail's handling of COVID-19, he does not attribute that handling to any unconstitutional policy, custom, or failure to train on the part of the county itself.

Second, plaintiff has failed to state individual capacity claims against defendants Dobbs and Burton, because he has not demonstrated their personal liability for violating his constitutional rights. *See Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (explaining that 42 U.S.C. § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights"). Specifically, the only allegations against Sheriff Dobbs and Jail Administrator Burton consist of plaintiff's assertion that they did not speak with him. There is no support for the contention that plaintiff has a constitutional right to personally speak with certain jail officials. Furthermore, there are no facts establishing that Dobbs and Burton were personally responsible for violating plaintiff's rights with regard to the handling of COVID-19.

Third, plaintiff does not indicate the capacity in which he has sued defendants Light, Samuel, Ketchum, Shane, Taylor, Jeff, Luke, Miller, Vega, Reggie, Allen, and McMean. As such, the Court must assume that these defendants are sued in their official capacities only. *Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998) ("If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity"). An official capacity claim is treated as being made against defendants' employer. However, as discussed above, plaintiff has not stated a municipal liability claim against Butler County.

Fourth, even if plaintiff had sued defendants Light, Samuel, Ketchum, Shane, Taylor, Jeff, Luke, Miller, Vega, Reggie, Allen, and McMean in their individual capacities, he has not demonstrated each person's direct responsibility for a constitutional harm. That is, he has not shown that each individual bore personal responsibility for the conditions in the jail, the handling of COVID-19, and the purported denial of plaintiff's medical care. To the contrary, most of his allegations concern the various defendants attempting to answer his questions or provide assistance.

Rather than dismissing the complaint, plaintiff will be given an opportunity to file an amended complaint according to the instructions set forth below. Plaintiff **must** follow these instructions. Failure to follow these instructions may result in the dismissal of this action.

### B. Amendment Instructions

Plaintiff should type or neatly print his amended complaint on the Court's civil rights form, which will be provided to him. *See* E.D. Mo. L.R. 2.06(A) ("All actions brought by self-represented plaintiffs or petitioners should be filed on Court-provided forms"). If the amended complaint is handwritten, the writing must be legible.

In the "Caption" section of the Court-provided form, plaintiff should clearly name each and every party he is intending to sue. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). If there is not enough room in the caption, plaintiff may add additional sheets of paper. However, all the defendants must be clearly listed.

Plaintiff should put his case number in the appropriate location on the upper right-hand section of the first page. He should then fill out the complaint form in its entirety, and ensure that it is signed.

In the "Statement of Claim" section, plaintiff should provide a short and plain statement of the factual allegations supporting his claim. *See* Fed. R. Civ. P. 8(a). Plaintiff should put each claim into a numbered paragraph, and each paragraph should be "limited as far as practicable to a single set of circumstances." *See* Fed. R. Civ. P. 10(b).

The amended complaint should only include claims that arise out of the same transaction or occurrence. In other words, plaintiff should only include claims that are related to each other. *See* Fed. R. Civ. P. 20(a)(2). Alternatively, plaintiff may choose a single defendant and set forth as many claims as he has against that defendant. *See* Fed. R. Civ. P. 18(a).

In structuring his amended complaint, plaintiff should begin by writing the defendant's name. In separate, numbered paragraphs under that name, plaintiff should write a short and plain statement of the factual allegations supporting his claim against that specific defendant. If plaintiff is suing more than one defendant, he should follow the same procedure for each defendant.

Plaintiff must specify whether he intends to sue each defendant in an official capacity, an individual capacity, or both. The failure to sue a defendant in his or her individual capacity may result in the dismissal of that defendant.

If plaintiff is suing a defendant in an individual capacity, he is required to allege facts demonstrating the personal responsibility of the defendant for harming him. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (stating that 42 U.S.C. § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights"). Put another way, there must be allegations against each specific individual demonstrating how that person violated plaintiff's rights. Furthermore, the Court emphasizes that the "Statement of Claim" requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action." *See Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017).

If plaintiff is suing multiple defendants, it is important that he establish the responsibility of each separate defendant for harming him. That is, for each defendant, plaintiff must allege facts showing how that particular defendant's acts or omissions violated his constitutional rights. It is not enough for plaintiff to make general allegations against all the defendants as a group. Rather, plaintiff needs to provide the role of each named defendant in this case, in order that each specific defendant can receive notice of what he or she is accused of doing. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (stating that the essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim").

Plaintiff is warned that the filing of an amended complaint **completely replaces** the original complaint. This means that claims that are not re-alleged in the amended complaint will be deemed abandoned. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect").

After receiving the amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915. Plaintiff's failure to make specific factual allegations against a defendant will result in the

dismissal of that defendant. If plaintiff fails to file an amended complaint on a Court-provided form within thirty days in accordance with the instructions set forth herein, the Court will dismiss this action without prejudice and without further notice to plaintiff.

### C. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 4). In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Specifically, as discussed above, the Court has determined that plaintiff's complaint is deficient, and has ordered him to submit an amended complaint. The Court will entertain future motions for appointment of counsel as the case progresses, if appropriate.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $13.72 within **thirty (30) days** of the date of this order. Plaintiff is instructed to make his remittance

payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 4) is **DENIED** at this time.

**IT IS FURTHER ORDERED** that the Clerk of Court shall send to plaintiff a copy of the Court's prisoner civil rights complaint form.

**IT IS FURTHER ORDERED** that plaintiff shall file an amended complaint on the Court-provided form within **thirty (30) days** of the date of this order, in accordance with the instructions set forth above.

**IT IS FURTHER ORDERED** that if plaintiff fails to file an amended complaint on the Court-provided form within **thirty (30) days** of the date of this order, in accordance with the instructions set forth above, the Court will dismiss this action without prejudice and without further notice.

**IT IS FURTHER ORDERED** that upon the filing of plaintiff's amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915.

Dated this 28th day of June, 2022.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE

13